## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 25-434** |
| **RICHARD A. ADAMSKY** | **:** | |

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Richard Adamsky stands before this Court facing sentencing for his receipt and possession of child pornography, offenses he committed while employed as a 7th and 8th grade teacher at a Catholic grade school.  His crimes are clearly egregious, resulting in a calculated Guideline range of 97-121 months' imprisonment, 60 months of which is mandatory. For the reasons outlined below, the Government requests that the Court impose the recommended term of incarceration, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the '3553(a) factors. . . . [A] rote statement of the 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The Government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.   **BACKGROUND**

The defendant was charged by a federal Grand Jury on September 25, 2025, in a two-count indictment with receipt and attempted receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count One), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Two).  On December 22, 2025, the defendant appeared before this Court and entered pleas of guilty to Count One and Two pursuant to a written plea agreement.

## II.   **FACTUAL BACKGROUND**

The investigation in this case began when Microsoft Corporation filed a CyberTipline Report ("Cybertip") with the "incident type" categorized as Apparent Child Pornography.  The

National Center for Missing and Exploited Children ("NCMEC") provided Cybertip 208392838 which reported information concerning login activity on March 31, 2025, at 00:02:53 UTC, using a specific Internet Protocol (IP) address. The Cybertip indicated that personnel at the Microsoft Corporation reported to NCMEC there was a "hash match," which indicated that the hash value assigned to the image and file reported in the Cybertip matched the hash value of an image and file that had been previously identified as containing child pornography.  After obtaining a warrant to view the Cybertip law enforcement viewed the image which depicted a nude pre-pubescent female lasciviously exhibiting her genitals.

The investigation determined that the IP Address contained within the Cybertip was assigned to Verizon.  Verizon provided that the IP address was assigned to customer Richard A Adamsky, 327 Gibson Avenue, Warminster, Bucks County, Pennsylvania at the time of login and that Adamsky had provided Verizon with phone number 215-443-8046 and email MrAdamsky@aol.com.

On June 25, 2025, a search warrant was executed on Adamsky's residence at 327 Gibson Avenue, Warminster, Pennsylvania.  The search resulted in the recovery of several electronic devices, including Dell desktop computers, a Staples 256 MB flash drive, and a Lexar flash drive.

Adamsky was home at the time and agreed to be interviewed.  During the interview he stated that he had lived at the location by himself since 1993 and no one other than him had access to his WIFI. He said he had been a 7th and 8th grade teacher for 38 years at Nativity of Our Lord school.  He said he used Google to search for pornographic images and videos. He said he liked "young stuff" and used terms like "CP" and "child pornography" to find sexual images.  He

said he viewed images/videos of minors aged 12-14 but did not think he looked at anything younger than 12-14. He said he looked at whatever came back on his searches and did not have a preference between boys or girls.  He said he would use the search results for "sexual stimulation" and would masturbate while he viewed them. When he was asked how long he had been engaging in this conduct he stated, "too long" and when asked how many images he had downloaded, he stated, "too many."  He further stated that he viewed CP "nightly" and estimated that he had downloaded "hundreds" of images to his upstairs computer. He was adamant that he never touched any of his students or any minors – stating that touching children was "a line you do not cross." Adamsky provided the PINS to his various devices.

The Dell Desktop Inspiron 3380's memory card contained a video (20 minutes and 38 seconds in length) depicting a prepubescent minor girl removing her clothing and exposing her vagina.  The video was received on June 15, 2024, and was stored in the Downloads folder. (Count 1). Further, an image depicting a still frame screen capture from the video was stored in the OneDrive screenshots folder.  The screen capture, which was created on March 2, 2025, depicted a prepubescent minor girl with her underwear to the side, exposing her vagina. Additional CP images were stored in the temporary space of the computer. Additionally, the Downloads folder contained thousands of images depicting minor girls posing in bathing suits and modeling.

From the Dell Desktop, the memory card contained at least three videos and 152 images of child pornography.  The videos had associated dates of May 2, 2018, November 22, 2018, and February 9, 2019.  The images primarily depicted prepubescent minor girls lasciviously exhibiting their genitals or engaging in sexual activity, such as masturbation, oral sex, and

vaginal sex.  There were also several images depicting the sexual abuse of toddlers and

sadistic/masochistic conduct, including:

> An image depicting a prepubescent minor girl that appears to be a toddler with an erect adult penis being inserted into her vagina.  There appears to be semen on the outside of the child's vagina.

> An image depicting a prepubescent minor girl that appears to be a toddler with a hand holding her down while an erect adult penis is inserted into her vagina. There appears to be semen on the end of the penis and a diaper under the child.

> An image depicting a prepubescent minor girl that appears to be a toddler with a bow in her hair and eyes closed as an erect adult penis is inserted into her mouth.

> An image depicting a dog with its tongue on a prepubescent minor girl's exposed vagina.

The Downloads folder also contained hundreds of images depicting minor girls modeling,

wearing bathing suits, or posing as part of cheerleading and gymnastics teams.  Additionally, a

folder contained hundreds of screen captures depicting the social media pages of minor girls,

many of whom were students in the Warminster area.

The computer contained search history and web visits in the Chrome and Microsoft Edge browsers related to child pornography and child exploitation. The searches were conducted for more than 12 years, with dates that ranged between approximately 2013 and 2025. The following is sampling of the web history:

Containing "child pornography":

8/17/2016: doylestown-man-accused-of-downloading-child-pornography

8/17/2016: hatboro-man-sentenced-to-prison-for-possessing-sharing-child-pornography

1/8/2019: A grand jury report identified a group of former Pittsburgh priests who "used whips, violence and sadism in raping their victims,\" and created child pornography

1/16/2019: catholic-priests-child-pornography-pittsburgh-diocese-pennsylvania-grand-jury-sex-abuse-report

9/10/2021: McKayla Maroney leaked nude photos are CHILD
PORNOGRAPHY | Daily Mail Online

The device contained the following Google searches related to minors engaging in sexual activity:

5/4/2013: cute claudia preeteen masturbation
5/26/2013: do teen girls know guys jerk off to their photos?
6/7/2013: black guys jerking off to young girls
11/12/2013: huge black guys jerking off to preteen girls
11/23/2013: preteen Claudia masturbation video
12/1/2013: guys jerking off to little girls photos
12/14/2013: little girl sucking cock
5/25/2014: should preteen girls masturbate?
9/19/2014: 14 year old girls who are sexually active
1/24/2015: really young boys jerking off to little girls photos
7/4/2015: 15 year old girl sex stories fiction kristen archives
7/11/2015: 15 year old girls sex stories kristen archives
12/27/2015: gang sex with high school girls
1/25/2016: little girls giving head
10/14/2016: teens having sex
5/8/2017: cyoung boys having sex with girls
6/16/2017: Cara 17 years old intercourse
8/20/2017: 17 year old girls having sex
8/23/2017: stories little girl masturbates daddy other pages real porn full porn
1/25/2018: cara 17 year old girl-sex
3/29/2018: cute guys pounding little girls

The following Google searches were related to minors engaging in sexual activity but did not have an associated date:

asian_sex_14_year_blow_jobbest deep throat by little girls
blow jobs by young girls
cute guys jerking off to little girls photos
cute little boys jerking off to photos

cute young guys jerking off to girl photos
guys fapping to young girls
guys jerking off to young girls photos
guys stroking to little girls
guys with huge tools fapping to young girls
huge black guys jerking off to little girls photos
little boys jerking off to photos

6

old guys jerking off to little girls photos
preteen girls masturbating omegle
skinny teen fingering her wet pussy - with sound
teen intercourse
young boys jerking off
young boys jerking off to photos
8th grade girls having sex
14 year old girls having sex
15 year old girls think about sex?
16 year olds giving blowjobs

Many web visits and Google searches were related to child exploitation with students or teachers:

6/30/2013: this weeks most salacious teacher student sex stories
11/15/2013: male teachers jerking off to photos
6/7/204: when should i have sex with my teacher?
6/14/2014: middle school teacher student sex stories
10/31/2015: home alone with teacher
12/27/2015: stories of girls who want to have sex with their teachers
8/31/2016: pretty middle school girls in yoga pants
9/23/2016: hot junior high girls
11/19/2017: kristen archives-teacher sex
9/10/2018: do girls want to have sex with their teachers?
9/19/2021: junior high school teacher-student sex stories
9/19/2021: hot sex stories teacher student fiction

There were also searches related to social media privacy ("can you see who is viewing you on Instagram") and device privacy ("is there any danger by creating a download link").

The Staples Flash Drive contained various images and collages depicting pornography, including an image depicting a post pubescent minor girl, fully nude, with her legs in the air and her hands holding her buttock apart to expose her vagina, and a photo collage of nine photos which depicted three prepubescent girls in five of the photos fully nude and staged in sexually suggestive positions.

The Lexar Flash drive contained several images and videos including and image of a

prepubescent minor girl, fully nude, with her knees pulled up, exposing her vagina and a video which depicts a prepubescent minor girl in a bed exposing her breast and vagina and touching herself.

In total, the number of images across the devices far exceeded the maximum of 600 images contemplated by USSG § 2G2.2(b)(7)(D).

## III.    SENTENCING CALCULATION.

### A.    Receipt of Child Pornography, 18 U.S.C. § 2252(a)(2) (Count One)

A statutory maximum of 20 years' incarceration with a 5-year mandatory minimum term, a minimum 5 years up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution of at least $3,000 for each victim pursuant to 18 U.S.C. § 2259(b), and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and another special assessment of up to $35,000 pursuant to 18 U.S.C. § 2259A(a)(2).

### B.    Possession of Child Pornography, 18 U.S.C. § 2252(a)(4)(B) (Count Two)

A statutory maximum of 20 years' incarceration, a minimum 5 years up to a lifetime of supervised release, a $250,000 fine, a $100 special assessment, mandatory restitution of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b), and if found to be non-indigent, an additional mandatory $5,000 special assessment must be imposed pursuant to 18 U.S.C. § 3014, and another special assessment of up to $17,000 pursuant to 18 U.S.C. § 2259A(a)(2).

**Total Maximum Penalty:** A statutory maximum of 40 years' imprisonment, with a mandatory minimum of 5 years' imprisonment, a mandatory minimum 5 years up to a lifetime of supervised release, mandatory restitution in an amount of at least $3,000 per victim pursuant to 18 U.S.C. § 2259(b)(2)(B), forfeiture, a $200 special assessment, and, if found not to be indigent, up to $52,000 in additional assessments pursuant to 18 U.S.C. § 2259A.

### C.    Effect of Revocation of Supervised Release

Supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to two years on each of Counts One and Two. Thus, a violation of supervised release increases the

8

possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

### C.   Sexual Offender Registration Requirements

Upon conviction, the Sex Offender Registration and Notification Act ("SORNA"), which is a federal law, requires the defendant to register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. He must update his registrations not later than three business days after any change of name, residence, employment, or student status. In addition, failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

### D.   Sentencing Guidelines Calculation by the U.S. Probation Department

The Probation Office correctly calculated the defendant's advisory Guideline range at 97-121 months' incarceration, as follows:

| Group One (Counts One and Two) | Base offense level, USSG § 2G2.2(a) | 22 |
|---|---|---|
| | Conduct limited to the receipt or solicitation of CSAM and did not involve transportation or distribution, USSG § 2G2.2(b)(1) | -2 |
| | Victim under the age of 12 years, § 2G2.2(b)(2) | +2 |
| | Images portray sadistic or masochistic conduct, § 2G2.2(b)(4) | +4 |

| | Use of a Computer§ 2G2.2(b)(6) | +2 |
|---|---|---|
| | Images in excess of 600, § 2G2.2(b)(7)(D) | +5 |
| | Total Offense Level | 33 |
| | | |
| | Acceptance of responsibility and timely notification | -3 |
| | | |
| Adjusted Offense Level | | **30** |
| Criminal History Category | 0 criminal history points, | Category I |
| | | |
| **FINAL GUIDELINE RANGE** | | **97-121 months** |

## IV.    <u>SENTENCING ANALYSIS.</u>

### <u>Consideration of the 3553(a) Factors.</u>

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

As detailed below, the Government believes that a consideration of the advisory Guidelines range and the Section 3553(a) factors support a sentence at the top of the advisory guideline range. The Government further recommends that the Court impose a term of supervised release of 20 years, a fine, if any, to be determined by the Court, mandatory restitution, and forfeiture of the property used to facilitate the defendant's crime.

### A. *The nature and circumstances of the offenses.*

> *"Every time someone else sees pictures or videos of me it feels like they are the ones who hurt me to begin with. It feels like they are the ones who did this to me, that they are my father and they just want to use me for their own pleasure. It is like I am here for other people's pleasure and not a person myself with my own wants and needs. If you are looking at pictures or videos of me, or any other child for that matter, then you are hurting every one that you look at. Anyone who looks at these horrible pictures of me or other children are abusing us. Anyone who looks is keeping my pain going for the rest of my life. I cry at night because of this. Even though I don't know the*

> *names of all of them, I know they are out there and I am afraid that they are all around me."*

*See* Exhibit A, excerpt from statement by child victim "Marineland 1."

The defendant's crimes are heinous. He received, downloaded, possessed, and viewed child pornography over an extended period of many years. Each image and video he gratified himself to was created from the horrific and violent rape and abuse of young children to provide pornography for people like the defendant. By contributing to and sharing in the world of child pornography trading, he and others like him perpetuate the harm to the child victims depicted in these images by creating demand and fueling this market, which leads to more sexual abuse of children and further production of images. Given the scope of the internet, the exploitation is ongoing and relentless. As the Supreme Court has explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Government have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008).

Congress, too, has explained the difficulties in successfully combating the "immense" problem of child pornography and the "rapidly-growing market" for such materials, which is fueled by new technologies that were largely unavailable when the Sentencing Guidelines were first promulgated. *See S. Rep. No. 108-2 (2003).* Indeed, Congress has repeatedly expressed its dismay about the "excessive leniency" of federal sentences, *see H. Rep. No. 108-66; S. Rep. No. 104-358*, especially in light of the continuing harm caused to the children appearing in such materials, as well as the inflammatory effect it has on the "desires of child molesters, pedophiles, and child pornographers," which results in a robust and growing market for child pornography and increased abuse of innocent children. *See Child Pornography Prevention Act of 1996,* Pub.

L. No. 104-208, § 121, 110 Stat. 3009, 3009-26, 27 (1996), codified at 18 U.S.C. § 2251 note; *United States v. MacEwan*, 445 F.3d 249, 250 (3d Cir. 2006); *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). ("[T]he victimization of the children involved does not end when the pornographer's camera is put away.").

Each view, download, and distribution of child pornography re-victimizes the children who were abused to create that particular piece of child pornography. In *United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006), the Third Circuit upheld the defendant's admittedly "harsh" sentence for distributing and possessing child pornography based, in large part, on the extreme harm to the children who are victims of sexual abuse because "'where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.' Moreover, Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.' … Furthermore, 'it inflames the desires of ... pedophiles ... who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." (Internal citations omitted.)

Here, the images possessed by the defendant contained particularly horrific depictions of child sexual abuse, in that they involved sadomasochism and violence, including toddlers who were raped. PSR ¶ 23.  Attached to this memorandum are letters from child victims whose sexual

abuse was recorded, and those recordings downloaded and possessed by the defendant. *See* Exhibit A -Victim Impact Statements (filed separately under seal). These letters describe the life-long pain and suffering that they endure because of the continued distribution and viewing of the recorded images of their abuse.

The victims' words—and the words of their families—detail the horrific trauma that they experience every time people like the defendant download, view and collect their images. There can be no doubt that the defendant's crime is serious and warrants significant punishment.

**B.     The history and characteristics of the defendant**

The history and characteristics of this defendant support a significant sentence. Though this is the defendant's first criminal conviction, he committed these crimes for years. And yet, his Guidelines in this case have been calculated as a first-time sex offender. The Guidelines already reflect the fact that he has no prior criminal record. He should not now receive any additional consideration. *See United States v. Borho*, 485 F.3d 904 (6th Cir. 2007) (There were no "extraordinary circumstances" that justified a decreased sentence based on, among other considerations, the defendant's lack of a criminal history, lack of evidence that he had ever molested a child, and a sex offender risk assessment that opined that the defendant was at low risk for re-offending); *United States v. Peterson*, 83 Fed.App'x. 150 (8th Cir. 2003) (appeals court reversed District Court's downward departure based on the low likelihood for re-offense and susceptibility to abuse in prison, as the first factor was already accounted for in the Guidelines and the second factor was inapplicable to the facts of the case); *United States v. Goldberg,* 295 F.3d 1133 (10th Cir. 2002) (defendant's lack of prior record, and low risk of recidivism are not valid grounds for downward departure because those factors are all taken into

14

account in the Guidelines themselves). Adamsky's lack of a prior record should not provide any basis to vary from the Guideline range, based on the facts of this case.

The vast majority of federal child pornography offenders have no prior records at all at the time that they are sentenced. *See U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320* (2011) available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm. . This puts defendant Adamsky squarely in the heartland of most sex offenders in federal court.

One of the aggravating factors in this case is that the defendant chose employment as a teacher, teaching 7th and 8th grades at Nativity of Our Lord Catholic School.  Additionally, in his spare time, he coached and refed youth sports and tutored.   Even more egregious, many of the images that the defendant searched for and downloaded depicted children in the very same age range as the children he was teaching, coaching and interacting with.  This should cause this Court great concern, because of all the professions that he could have entered, the defendant chose a line of work in which he was surrounded by children day after day who were the same age as those depicted in the child sexual abuse material he so carefully sought out to collect. Additionally, as described above, his search history, going back as far as 2013, includes searches related to teacher-student sex stories. Every morning parents would send their children to school, entrusting their children to the care of the defendant, not knowing that for over a decade, this defendant, night after night, trolled the internet seeking to pleasure himself at the expense of children.

He only sought help with this criminal compulsion after he was arrested.  According to the forensic psychological evaluation prepared by the defense, Adamsky claimed that only after he began therapy did he realize he had a sexual addition, noting "I didn't know, I didn't realize. I knew I shouldn't be going down that road but who am I going to tell? Who could I turn to?" The answer to that question is simple –Since you knew that what you were was wrong and you could have and should have sought treatment before you were forced into it.  It is difficult if not impossible to reconcile the man that devoted his life to teaching with the man that for over a decade sought out images and videos of children being horribly abused.  Notably, Adamsky has not availed himself of any of the therapeutic interventions available at the FDC, nor has he engaged in therapy with the medical and mental heath professionals at the FDC.

  **C.**  **The seriousness of the offense, respect for the law, and just punishment.**

A significant term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). This defendant's crimes are among the most serious. He sought, received, downloaded, and possessed thousands of images of child pornography for over a decade. He did this while holding one of the most important positions of trust – teaching our children.

  **D.**  **Deterrence**

Deterrence is also one of the factors that calls for a significant sentence. The defendant himself needs to be deterred from sexually exploiting children in the future, which can be accomplished through the recommended term of incarceration and by the strict conditions mandated by the supervised release term required for his child sex crimes. The recommended

sentence comports with sentences imposed for similar crimes in this district and around the country.

Section 3553(a)(2) also mandates that the Court consider a sentence that adequately deters others who would commit similar offenses. The sentence in this case must give notice that the sexual abuse and exploitation of children has serious and significant consequences. A term of incarceration called for by the Guidelines in this case will serve as a deterrent to those who may contemplate the consequences of sexually abusing or exploiting a child.

### E.     Other considerations.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D). The defendant requires mental health treatment and sex offender treatment and he should be encouraged to take advantage of the services available through the Bureau of Prisons. Every BOP facility provides some level of mental health treatment, and for sex offenders, there is specialized treatment at BOP facilities, including the Sexual Offender Management Program ("SOMP") which is staffed by highly trained psychiatric professionals.  If the defendant truly desires mental health treatment, he can avail himself of such treatment during his imprisonment and after his release, while under his term of supervised release.

### F.     Restitution.

A number of the child victims in the defendant's collection have requested restitution, and the Government has provided supporting documentation for the requests to defense counsel. The parties will advise the Court should an agreement be reached prior to the sentencing hearing.

### G.    Supervised Release.

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of 20 years is warranted. As explained above, the defendant engaged in criminal conduct for over a decade.  By his own admission, it became a compulsion.  Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue mental health treatment that

promotes rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as these additional conditions included in Appendix A of the PSR.

## V.    CONCLUSION

For all of the reasons outlined above, the appropriate considerations of sentencing favor the imposition of a sentence at the top of the Guideline range.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Maureen McCartney*
Maureen McCartney
Assistant United States Attorney

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I caused a true and correct copy of the foregoing

Government's Sentencing Memorandum to be served by email and through the electronic filing

system upon counsel for defendant

<u>/s Maureen McCartney</u>
Maureen McCartney
Assistant United States Attorney

Date: April 7, 2026